UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

CAMERON STACEY EARLY,

        Plaintiff,

   v.

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

        Defendant.

CASE NO. 3:14-CV-06015-DWC

ORDER ON PLAINTIFF'S COMPLAINT

    Plaintiff filed this action, pursuant to 42 U.S.C § 405(g), seeking judicial review of the Defendant's denial of Plaintiff's application for Social Security Disability Insurance Benefits and Supplemental Security Income Benefits. The parties have consented to proceed before a United States Magistrate Judge. Dkt. 18; *See* 28 U.S.C. § 636(c), Fed. R. Civ. P. 73 and Local Magistrate Judge Rule MJR 13.

    The Court concludes the ALJ did not err by excluding certain conditions from the list of Plaintiff's "severe impairments" at Step Two of the sequential evaluation. Further, the ALJ provided clear and convincing reasons, supported by substantial evidence, for partially

ORDER ON PLAINTIFF'S COMPLAINT - 1

1  discrediting Plaintiff's subjective pain symptoms, and otherwise supported the residual

2  functional capacity determination with substantial evidence. Therefore, this matter must be

3  AFFIRMED.

## PROCEDURAL & FACTUAL HISTORY

On September 20, 2011, Plaintiff protectively filed an application for Disability Insurance Benefits ("DIB"). *See* Dkt. 11, Administrative Record ("AR") 244. Plaintiff subsequently filed an application for Supplemental Security Income Benefits ("SSI") on November 14, 2011.[1] AR 246. Plaintiff alleges he became disabled on March 15, 2010, due to posttraumatic stress disorder, depression, anxiety, panic attacks, insomnia, chronic pain, shoulder, neck and back problems, mineral deficiencies, and hormonal imbalances. *See* AR 95, 244, 246. Plaintiff's application was denied upon initial administrative review on October 18, 2011, and on reconsideration on February 15, 2012. *See* AR 94, 105, 106, 146. A hearing was held before an administrative law judge ("ALJ") on February 13, 2013, at which Plaintiff, represented by counsel, appeared and testified. *See* AR 34. A vocational expert, Leta Berkshire, also appeared and testified. *Id.*

The ALJ issued his decision on May 1, 2013, finding Plaintiff was not disabled within the meaning of Sections 216(i), 223(d), and 1614(a)(3)(A) of the Social Security Act. AR 8. Plaintiff's request for review was denied by the Appeals Council on October 27, 2014, making that decision the final decision of the Commissioner of Social Security (the "Commissioner"). *See* AR 1, 20 C.F.R. §§ 404.981, 416.1481. On January 2, 2015, Plaintiff filed a Complaint seeking judicial review of the Commissioner's final decision. Dkt. 3.

---

[1] Subsequent proceedings, including the ALJ's decision and the Appeals Council review, treat Plaintiff's DIB and SSI applications as if they were both filed on September 20, 2011.

1  Plaintiff argues the denial of benefits should be reversed and remanded for further
2  proceedings, because the ALJ erred by failing: (1) to properly assess Plaintiff's severe
3  impairments at Step Two of the Sequential Evaluation; (2) to provide clear and convincing
4  reasons for rejecting Plaintiff's subjective symptom testimony; (3) to give germane reasons for
5  rejecting lay witness' testimony; (4) to include all of Plaintiff's limitations in the residual
6  functional capacity; and (5) to include all Plaintiff's credible limitations in the hypotheticals
7  posed to the Vocational Expert, or otherwise relying upon flawed testimony from the Vocational
8  Expert. Dkt. 14, pp. 1-2.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits only if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (*citing Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)). "Substantial evidence" is more than a scintilla, less than a preponderance, and is such "'relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989) (*quoting Davis v. Heckler*, 868 F.2d 323, 325-26 (9th Cir. 1989)).

## DISCUSSION

**I. Whether the ALJ Erred in Assessing Plaintiff's Severe Impairments at Step Two of the Sequential Evaluation**

**A. Standard**

Plaintiff contends the ALJ erred by failing to classify several diagnoses and symptoms as "severe impairments" at Step Two. Dkt. 14, pp. 3-9. At Step Two, the ALJ is required to determine whether a claimant has "a medically severe impairment or combination of impairments." *Smolen v. Chater*, 80 F.3d 1273, 1289-90 (9th Cir. 1996) (internal citation

omitted); 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii) (1996). The Step Two evaluation is a *"de minimis* screening device to dispose of groundless claims." *Smolen*, 80 F.3d at 1290 (*citing Bowen v. Yuckert*, 482 U.S. 137, 153-54 (1987)). Thus, "[a]n impairment or combination of impairments can be found 'not severe' only if the evidence establishes a slight abnormality that has 'no more than a minimal effect on an individual[']s ability to work.'" *Smolen*, 80 F.3d at 1290 (*quoting* Social Security Ruling[2] ("SSR") 85-28, 1985 WL 56856 at *3) (*citing Yuckert v. Bowen*, 841 F.2d 303, 306 (9th Cir. 1988)). However, it is Plaintiff's burden to "furnish[] such medical and other evidence of the existence [of a severe impairment] as the Secretary may require." *Bowen*, 482 U.S. at 146 (*quoting* 42 U.S.C. § 423(d)(5)(A)).

**B.  Application of Standard**

The ALJ found Plaintiff had three severe impairments: (1) status-post right hip arthrodesis; (2) mood disorder; and (3) posttraumatic stress disorder. AR 14. Plaintiff contends the ALJ should also have included other diagnoses and symptoms associated with the additional impairments of sleep apnea, degenerative disc disease, left hip pain, migraine/cluster headaches, and various other mental disorders. Dkt. 14, pp. 3-8. However, the ALJ found that:

> [t]he claimant was also treated for a variety of other symptoms and complaints that appear periodically throughout the record. These conditions include, *but are not limited to,* irritable bowel syndrome, restless leg syndrome, and lower extremity edema. However, these conditions, considered singly or in combination, have caused only transient and mild symptoms and limitations, are well controlled with treatment, did not persist for twelve continuous months, do not have greater than a minimal limitation on the claimant's physical or mental ability to perform basic work activities, or are otherwise not adequately supported by the medical evidence of record. Accordingly, these impairments do not constitute severe impairments.

---

[2] Social Security Rulings do not have the force of law. Nonetheless, "they constitute Social Security Administration interpretations of the statute it administers and of its own regulations." *Quang Van Han v. Bowen*, 882 F.2d 1453, 1457 (9th Cir. 1989). Thus, "we defer to Social Security Rulings unless they are plainly erroneous or inconsistent with the [Social Security] Act or regulations. *Id.* (*citing Chevron USA, Inc. v. NRDC, Inc.*, 467 U.S. 837, 842-45 (1984)).

AR 14 (emphasis added). The ALJ considered all Plaintiff's impairments and determined only certain conditions and symptoms rose to the threshold of "severe" impairments.

The record contains substantial evidence in support of this finding. For instance, Plaintiff's headaches and sleep apnea are controlled through medication and therapeutic techniques, and thus did not result in "greater than minimal limitations." *See* AR 14, 417, 682-85, 694. Plaintiff argues his back, shoulder, and left hip pain were "severe" impairments, but the this argument focuses on symptoms and pain deriving from his *right* hip-- symptoms the ALJ considered a severe impairment. *See* Dkt. 14, pp.4-6, AR 14. Though Plaintiff cites treatment records from 2011 indicating Plaintiff reported low back pain at a 5/10 on the pain scale, these same records also indicate Plaintiff was responding well to pain medication, which was keeping him "functional." AR 994, Dkt. 14, p. 5.[3] Finally, Plaintiff argues the severe impairment of "Mood Disorder, NOS" was insufficient, both because Mood Disorder is a broad diagnosis, and because Plaintiff's chronic pain also causes mental limitations. Dkt. 14, pp. 4-5. However, the record supports the ALJ's inclusion of "Mood Disorder, NOS" as a severe impairment. *See* AR 879-883. The mental health providers also cited by the ALJ explicitly considered Plaintiff's history of pain as part of their evaluations, and the ALJ repeatedly discusses the interaction of Plaintiff's pain and his associated mental limitations throughout the written decision. AR 14, 20, 648, 882.

**C. Harmless Error**

Even if the ALJ had erred, however, any such error is harmless. An error is harmless if "there remains substantial evidence supporting the ALJ's decision and the error does not negate

---

[3] Plaintiff also conceded his back pain was a secondary complaint throughout the majority of the record. Dkt. 14, p. 5.

ORDER ON PLAINTIFF'S COMPLAINT - 5

the validity of the ALJ's ultimate conclusion." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (*quoting Batson v. Comm'r of Soc. Sec. Admin*, 359 F.3d 1190, 1197 (9th Cir. 2004)). Thus, if a claimant prevails at Step Two and the ALJ considers all impairments—regardless of severity—in the subsequent steps, an ALJ's failure to consider an impairment "severe" is harmless. *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007). *See also Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007), *Garcia v. Commissioner of Soc. Sec.*, 587 Fed.Appx. 367, 370 (9th Cir. 2014). Plaintiff prevailed at Step Two. AR 14. Therefore, the critical question is whether the ALJ actually considered the various conditions and associated limitations in the remaining steps of the sequential evaluation.

The ALJ made the following residual functional capacity determination:

> [T]he claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except he can occasionally stoop, kneel, crouch, crawl, or climb ramps, stairs, ladders, ropes, or scaffolds; he can frequently balance; he must avoid concentrated exposure to extreme cold and vibration; he is limited to simple, routine tasks; he can have occasional superficial public contact.

AR 15. This residual functional capacity was used by the ALJ for Steps Four and Five of the sequential analysis. AR 22-23. Plaintiff does not identify, nor does the record reflect, any limitations or restrictions which are not included the residual functional capacity or were not explicitly considered and discredited by the ALJ. *See, e.g.*, AR 20, 688 (observing Nurse Price identified additional limitations, but discrediting those limitations because "more recent evidence indicates improvements in pain management and range of motion with surgery."). *See also* Section IV, *infra*. Indeed, some of the medical sources cited by Plaintiff are the sources of the very limitations the ALJ included in the residual functional capacity. *See, e.g.*, AR 648 (finding Plaintiff has the functional capacity "to perform simple and repetitive tasks," and to interact with the public on an "adequate" level). In addition, all of Plaintiff's credible pain symptoms were

exhaustively considered and incorporated into the ALJ's residual functional capacity analysis. *See* AR 15-21. *See also Lewis,* 498 F.3d at 911; *Burch v. Barnhart*, 400 F.3d 676, 683-84 (9th Cir. 2005) Thus, Plaintiff has failed to demonstrate how any failure to include a specific condition in the list of "severe" impairments was harmful.

**II.  Whether the ALJ Provided Clear and Convincing Reasons, Supported by Substantial Evidence, for Rejecting Plaintiff's Testimony Concerning His Subjective Complaints of Pain.**

Plaintiff argues the ALJ failed to provide clear and convincing reasons, supported by substantial evidence, for partially discrediting Plaintiff's testimony concerning his subjective complaints of pain. Dkt. 14, pp. 8-13.

**A.  Standard**

If an ALJ finds a claimant has a medically determinable impairment which reasonably could be expected to cause the claimant's symptoms, and there is no evidence of malingering, the ALJ may reject the claimant's testimony only "by offering specific, clear and convincing reasons." *Smolen*, 80 F.3d at 1284 (*citing Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir.1993)). *See also Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998)).  However, sole responsibility for resolving conflicting testimony and questions of credibility lies with the ALJ.  *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1999) (*citing Waters v. Gardner*, 452 F.2d 855, 858 n.7 (9th Cir. 1971); *Calhoun v. Bailar*, 626 F.2d 145, 150 (9th Cir. 1980)). Where more than one rational interpretation concerning a plaintiff's credibility can be drawn from substantial evidence in the record, a district court may not second-guess the ALJ's credibility determinations. *Fair v. Bowen,* 885 F.2d 597, 604 (9th Cir. 1989). *See also Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) ("Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld.").

B.  **Application of Standard**

Plaintiff contends the ALJ should have credited all his testimony on pain because various medical records reflect periods of debilitating pain and the evidence relied upon by the ALJ should have been interpreted in Plaintiff's favor. Dkt. 14, pp. 10-12, Dkt. 21, pp. 7-9, AR 852-59, 879-83, 911. Parts of the medical record can be read to corroborate Plaintiff's subjective reports of pain. However, the medical records also indicate improvements in Plaintiff's physical and mental condition, as well as variation in the severity, nature, and duration of Plaintiff's symptoms and functional abilities. *See, e.g.*, AR 852, 909, 911. Importantly, the ALJ did not dispute the existence of Plaintiff's underlying condition, nor did he dispute Plaintiff was experiencing *some* amount of pain. *See* AR 16-19. The ALJ is not required to conclude a claimant is disabled simply because the ALJ finds the claimant "has an ailment reasonably expected to produce some pain . . . many medical conditions produce pain not severe enough to preclude gainful employment." *Fair,* 885 F.2d at 603. Thus, to the extent the medical evidence supports more than one rational interpretation, the ALJ was entitled to resolve any ambiguities and conflicts in the evidence as part of the credibility determination.

Further, the ALJ provided several clear and convincing reasons, supported by substantial evidence, for discrediting Plaintiff's subjective symptom testimony. First, the ALJ observed Plaintiff had gone fishing, was planning on going camping, and volunteered as a camp counselor for his church, despite Plaintiff's alleged limitations in squatting, bending, standing, reaching, sitting, kneeling, and using hands. AR 17-19, 882. The Commissioner also correctly notes, prior to those documented events, Plaintiff claimed he had discontinued those same activities due to his disabling condition. AR 537. Inconsistencies between a claimant's testimony concerning his limitations and the claimant's activities of daily living are clear and convincing reasons,

supported by substantial evidence, for discrediting a claimant's testimony. *See Orn,* 495 F.3d at 639. Moreover, the fact Plaintiff represented he had discontinued his hobbies of camping and fishing due to pain, then subsequently represented to other individuals his intention to participate and, indeed, actual participation in those same activities, bears directly on Plaintiff's credibility. *See Smolen*, 80 F.3d at 1284 (holding an ALJ is allowed to consider "ordinary techniques of credibility evaluation," including the claimant's reputation for truthfulness, inconsistencies in testimony regarding symptoms, and a claimant's daily activities). As such, the ALJ was entitled to rely upon these inconsistencies in discrediting Plaintiff.

As noted by the ALJ, Plaintiff's claims at the hearing concerning the severity and treatability of his ongoing pain are contradicted by numerous records indicating Plaintiff's physical and mental symptoms--though not completely resolved--were being effectively treated through medication, therapy, and various other modalities. *See, e.g.*, AR 16-21, 54, 994-95. A treatment's effectiveness is relevant in determining the severity of a claimant's symptoms, and the ALJ was entitled to rely upon that evidence in assessing the credibility of Plaintiff. 20 C.F.R. § 404.1529(c)(3)(iv) and (v); *Tommasetti v. Astrue*, 533 F.3d 1035, 1039-40 (9th Cir. 2008); *Morgan v. Commissioner of Social Sec. Admin.*, 169 F.3d 595, 1999). *Cf. Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir 2006) (noting that the critical question for assessing whether a claimant was no longer entitled to benefits was not whether he still had the medical condition which led to his initial disability, but whether "the severity of the problem had decreased sufficiently to enable him to engage in gainful activity"). Thus, Plaintiff's inconsistent reports of effective treatment are another clear and convincing reason, supported by substantial evidence, for the ALJ to discredit Plaintiff's testimony.

The ALJ provided clear and convincing reasons for discrediting Plaintiff's subjective symptom testimony. The ALJ also resolved conflicts and ambiguities in the evidentiary record rationally, and in a manner otherwise consistent with his obligations. *Smolen,* 80 F.3d at 1284; *Fair,* 885 F.2d at 604. Therefore, this Court will not disturb the ALJ's credibility findings.

### III. Whether the ALJ Gave Germane Reasons for Rejecting each Lay Witness' Testimony.

In the Ninth Circuit, lay witness testimony is competent evidence and "cannot be disregarded without comment." *Bruce v. Astrue*, 557 F.3d 1113, 1115 (9th Cir. 2009) (*quoting Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996)). *See also* 20 C.F.R. § 404.1413(d), SSR 06-03p, 2006 WL 2329939 at *2. However, an ALJ may discredit a lay witness' testimony with specific reasons "germane to each witness." *Bruce,* 557 F.3d at 1115; *Turner v. Comm'r of Soc. Sec.,* 613 F.3d 1217, 1224 (9th Cir. 2010).

The ALJ found the testimony of the two lay witnesses [Plaintiff's wife and son] to be generally credible as to their observations, but found their statements were inconsistent with the medical evidence of record and inconsistent with the claimant's reported level of activity throughout the record. AR 19, 318, 420. The ALJ cited the efficacy of Plaintiff's pain treatment and Plaintiff's performance of "work-like activities . . . including light housework, gunsmithing, and volunteering as a camp counselor," as being inconsistent with the lay witness testimony. AR 19, 318, 420, 882, 909, 992. The lay witness statements concerning Plaintiff's irritability and capacity to perform part-time work are inconsistent with Plaintiff's testimony and the medical records cited by the ALJ. Dkt. 17, pp. 12-13, AR 19, 39, 41, 318, 420, 881-83. Inconsistencies between a lay witness' testimony and the medical evidence is a germane reason for discrediting a lay witness, as is rejecting a lay witness' testimony due to inconsistencies with Plaintiff's activities. *Lewis*, 236 F.3d at 511; *Bayliss*, 427 F.3d at 1218, *Valentine v. Commissioner, Social*

*Security Administration*, 574 F.3d 685, 694 (9th Cir. 2009). Because the ALJ cited germane reasons for partially discounting the testimony of the lay witnesses, there was no error.

**IV.   Whether the Residual Functional Capacity Determination was Deficient.**

Plaintiff argues the ALJ erred in assessing Plaintiff's residual functional capacity. In assessing a claimant's residual functional capacity, an ALJ is required to consider "all of the relevant medical and other evidence." 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). However, "[i]n making [an] RFC determination, the ALJ [is only required to take] into account those limitations for which there [is] record support that [do] not depend on [the claimant's] subjective complaints." *Bayliss,* 427 F.3d at 1217.

The ALJ is responsible for evaluating credibility and resolving ambiguities and conflicts in the medical evidence. *Reddick,* 157 F.3d at 722; see Section II, *supra*. Determining whether or not inconsistencies in the medical evidence "are material (or are in fact inconsistencies at all) and whether certain factors are relevant to discount" the opinions of medical experts "falls within this responsibility." *Morgan,* 169 F.3d at 603.  If the medical evidence in the record is not conclusive, sole responsibility for resolving conflicting testimony and questions of credibility lies with the ALJ. *Sample*, 694 F.2d at 642 (9th Cir. 1982) (*quoting Waters,* 452 F.2d at 858 n.7).

Plaintiff contends the ALJ failed to incorporate impairments identified by Dr. Michelle Karuna and Nurse Bret Price, and also failed to account for the effect Plaintiff's pain had on his mental impairments. Dkt. 14, pp. 6, 16, AR 622-23, 688. However, the opinions of Dr. Karuna and Nurse Price were contradicted in the record. Dkt. 17, pp. 14-15, AR 20, 54, 684, 852, 909, 994. When a treating or examining physician's opinion is contradicted, that opinion can be rejected "for specific and legitimate reasons that are supported by substantial evidence in the

record." *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995) (*citing Andrews*, 53 F.3d at 1043; *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)). The ALJ partially discredited Dr. Karuna and Nurse Price[4] on the grounds that subsequent developments in Plaintiff's medical and treatment history undermined their original conclusions concerning Plaintiff's prognosis and functional limitations. *See* AR 20, 619-23, 686-89, 701-04, 852, 909, 994. This is a specific and legitimate reason, supported by substantial evidence. *See* 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4).

The ALJ relied upon the opinions of several examining and consulting mental health professionals in assessing Plaintiff's residual functional capacity. AR 21, 125-130, 648, 651-57, 883, 886-901. These sources identify Plaintiff's migraines and chronic back pain, yet nonetheless recommended functional capacity limitations consistent with those adopted by the ALJ. AR 21, 125-130, 648, 651-57, 883, 886-901. Also, as discussed in Section II, above, the ALJ offered clear and convincing reasons, supported by substantial evidence, for discrediting Plaintiff's complaints of pain. Thus, Plaintiff has not demonstrated the ALJ failed to consider the effects of his pain on his mental impairments.

Plaintiff also objects to the ALJ's rejection of various Global Assessment of Functioning ("GAF") scores. Dkt. 14, pp.16-17, AR 19. Typically, GAF scores are competent evidence which must be considered by an ALJ. *See Garrison v. Colvin*, 759 F.3d 995, 1003 (9th Cir. 2014); *VanBibber v. Carolyn [Colvin]*, 2014 WL 29665, *3 (W.D.Wa. 2014) (observing GAF scores constitute medical opinions which cannot be summarily dismissed). However, GAF scores "do not control determinations of whether a person's mental impairments rise to the level of a

---

[4] Nurse Price is one of several medical sources who offered residual functional capacity limitations less restrictive than those ultimately adopted by the ALJ. *Compare* AR 703 (Nurse Price limiting Plaintiff to light work) *with* AR 15 (the ALJ limiting Plaintiff to less than the full range of sedentary work). *See also* AR 21-22 (finding Dr. Hale's restrictions were insufficient and instead applying a sedentary, rather than light, work restriction).

1  disability[.]" *Garrison*, 759 F.3d *at* 1002, n. 4.  Though the ALJ rejected the GAF scores offered

2  by Dr. Shadrach and Dr. Choi, those providers recommended limitations otherwise consistent

3  with the ALJ's residual functional capacity assessment. *See* AR 648, 882-83. The remaining

4  GAF scores cited by the ALJ are contained in records which simply do not discuss Plaintiff's

5  limitations. *See* AR. 917, 925. Consequently, Plaintiff has not shown how a rejection of these

6  GAF scores caused any harm. *See VanBibber*, 2014 WL 29665, *4.

7  If the evidence "is susceptible to more than one rational interpretation," including one

8  that supports the decision of the Commissioner, the Commissioner's conclusion "must be

9  upheld." *Thomas*, 278 F.3d at 954 (*citing Morgan,* 169 F.3d at 599, 601). The ALJ's

10 interpretation of that medical evidence and the associated limitations is rational and supported by

11 the record. Thus, this Court will not disturb the ALJ's residual functional capacity findings.

12 **V.  Whether the ALJ Failed to Include all of Plaintiff's Credible Limitations in the Hypotheticals to the Vocational Expert, or Otherwise Erred in Relying Upon the Vocational Expert's Testimony.**

14 Finally, Plaintiff contends the ALJ committed harmful error by failing to include all

15 Plaintiff's credible limitations in the hypotheticals posed to the Vocational Expert. Dkt. 14, pp.

16 17-18. Specifically Plaintiff contends the ALJ did not include limitations encompassing his

17 subjective experience of pain. Dkt. 14, p. 18. Plaintiff also contends, during questioning by

18 Plaintiff's counsel, the Vocational Expert acknowledged an individual with excessive unexcused

19 absenteeism and excessive rest breaks would be precluded from work. Dkt. 14, 18, AR 66-67.

20 However, as discussed in Sections II and IV, above, the ALJ provided clear and convincing

21 reasons for discrediting Plaintiff's subjective pain testimony, and the residual functional capacity

22 finding was supported by competent, substantial evidence. Further, none of the many medical

23 providers relied upon by the ALJ indicated Plaintiff would require excessive breaks or absences

24

1 from work. *See* AR 125-30, 648, 651-57. Thus, the ALJ did not err in relying upon the

2 Vocational Expert's testimony. *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1171 (9th Cir. 2008).

3       Plaintiff also attempts to incorporate by reference his arguments that the Vocational

4 Expert's testimony was based on incorrect job numbers in the national and local economies.

5 However, Plaintiff waived this argument by failing to properly present it in his opening brief. *See*

6 Dkt. 17, p. 17, Dkt. 10, p.2 ("Subsequent sections of the opening brief *must* fully explain each

7 issue raised in the assignments of error and *must* include citations to the specific pages of the

8 administrative record and the relevant legal authority that support each argument and request for

9 relief.") (emphasis added). *See also Greger v. Barnhart*, 464 F.3d 968, 973 (9th Cir. 2006),

10 *Bisuano v. Colvin*, 584 Fed.Appx. 512, 514 (9th Cir. 2014).

11       Even if Plaintiff had not waived the argument, a Vocational Expert's "recognized

12 expertise provides the necessary foundation for his or her testimony." *Bayliss*, 427 F.3d at 1217-

13 18. The Vocational Expert in this case testified approximately 50,000 jobs in the national

14 economy and approximately 2,000 jobs in the Washington State economy existed which Plaintiff

15 could perform. AR 23, 66. This was substantial evidence the ALJ was entitled to rely upon,

16 regardless of any alternative numbers proffered by Plaintiff. *See, e.g.*, *Valenzuela v. Colvin*, 2013

17 WL 2285232, *4 (C.D. Cal. 2013) ("the data presented by plaintiff was unaccompanied by any

18 analysis or explanation from a vocational expert or other expert source to put the raw data into

19 context. . . . [further, the Job Browser Pro] data, at best, would support an alternative finding

20 regarding the number of job[s] . . . ."); *Merryflorian v. Astrue*, 2013 WL 4783069, *4-5 (S.D.

21 Cal. 2013) (citing numerous cases for the proposition that a conflict between Job Browser Pro

22 data and a Vocational Expert's testimony concerning job numbers does not undermine the ALJ's

23 reliance on the Vocational Expert). Plaintiff's proffered data merely raised a conflict in the

24

ORDER ON PLAINTIFF'S COMPLAINT - 14

1  record the ALJ was entitled to resolve; that decision should not be disturbed by a reviewing

2  court. *Thomas*, 278 F.3d at 954, *Lewis*, 236, F.3d at 509.

3  **CONCLUSION**

4  Based on the above stated reasons and the relevant record, the undersigned finds the ALJ

5  properly concluded Plaintiff was not disabled. Therefore, the court ORDERS this matter be

6  AFFIRMED pursuant to sentence four of 42 U.S.C. § 405(g). Judgment should be for

7  DEFENDANT and the case should be closed.

8  Dated this 10th day of July, 2015.

David W. Christel
United States Magistrate Judge

record the ALJ was entitled to resolve; that decision should not be disturbed by a reviewing court. *Thomas*, 278 F.3d at 954, *Lewis*, 236, F.3d at 509.

### CONCLUSION

Based on the above stated reasons and the relevant record, the undersigned finds the ALJ properly concluded Plaintiff was not disabled. Therefore, the court ORDERS this matter be AFFIRMED pursuant to sentence four of 42 U.S.C. § 405(g). Judgment should be for DEFENDANT and the case should be closed.

Dated this 10th day of July, 2015.

David W. Christel
United States Magistrate Judge